## UNITED STATES *v.* .DUFF.

*(Circuit Court, S. D. New York.* January 24, 1881.)

**1. PRACTICE—NOTICE TO PRODUCE LETTER.**

Notice to produce an original letter was served upon the defendant's attorney on the afternoon of the day before the trial, at 20 minutes before 5 o'clock. *Held,* where the defendant's attorney had his office in the same town, and near the place of trial, that the notice was sufficient.

**2. SAME—SAME—ENVELOPE.**

The notice described the letter as enclosed in an envelope. *Held,* that the notice sufficiently indicated an intention to call for both the envelope and its enclosure.

**3. LOTTERY CIRCULAR—DEPOSIT IN MAIL—EVIDENCE.**

Upon the trial of defendant for having deposited a lottery circular in the mail, in reply to a letter addressed to John Duff & Co., it was proved (1) that defendant was accustomed to use the name of John Duff & Co., and sold lottery tickets under that name; (2) that defendant personally received the letter which contained the order for the circular in question, and also money to pay for two lottery tickets; and (3) that the circular was addressed to a fictitious name, known only to the defendant and the sender of the order. *Held,* under these facts, that it was competent for the jury to infer that the defendant deposited the circular.

**4. SAME—ADDRESSED TO FICTITIOUS NAME—REV. ST. § 3893.**

A letter containing a lottery circular, addressed to a fictitious name, was deposited in the mail. *Held,* that such letter was within the scope of section 3893 of the Revised Statutes, relating to the mailing of letters or circulars concerning lotteries.

**5. SAME—DELIVERY TO FEDERAL OFFICER.**

*Held, further,* that it did not make any difference in the act done by the defendant that the person to whom the letter was delivered was an officer of the United States.

**6. SAME—JUROR—TALK ABOUT LOTTERY BUSINESS.**

A juror who sat upon the trial of the defendant heard some general talk in the corridor of the court-house, before he was empanelled, about the wickedness of those engaged in the lottery business. *Held,* upon motion for a new trial, that he was not thereby disqualified.

**7. WITNESS—OCCUPATION—CREDIBILITY.**

The occupation of a person may always be shown as bearing upon the question of his credibility as a witness.—[ED.

Indictment. Motion for New Trial.

BENEDICT, D. J. The defendant was tried and convicted of having deposited in the mail a lottery circular. He now

moves for a new trial. One ground of the motion is that error was committed at the trial in admitting secondary evidence of the contents of a letter sent to the accused, without proof of sufficient notice to produce the original. The case shows that the place of business of the accused was in Nassau street, near the place of trial. It was proved that notice to produce the original letter was served upon the defendant's attorney on the afternoon of the day before the trial, at 20 minutes before 5 o'clock. The original not being produced, secondary evidence of its contents was admitted. In this there was no error. "In town cases service of notice on the attorney on the evening before the trial is in general sufficient." 2 Russ. on Crimes, 743.

Another ground of the motion is that secondary evidence was permitted to be given of the address upon the envelope of the letter sent to the defendant, when the notice to produce did not specify the envelope. But the notice to produce described the letter as enclosed in an envelope, and, we think, sufficiently indicated an intention to call for both the envelope and its enclosure. We also think that a notice to produce a letter covers the envelope of the letter.

It is further contended that the evidence was not sufficient to warrant the jury in finding that the defendant deposited the lottery circular, because the circular in question was sent in reply to a letter addressed to John Duff & Co., and there was no direct evidence that the defendant mailed it.

But it was proved that the defendant was accustomed to use the name of John Duff & Co., and sold lottery tickets under that name. It was also proved that the defendant personally received the letter which contained the order for the circular in question, and also money to pay for two lottery tickets. From these facts it was competent for the jury to infer that the defendant, who received the order for the circular and the pay for the tickets, was the person who remitted the circular and tickets, especially when it appeared that the circular and tickets were addressed to a fictitious name, known, so far as appears, only to the defendant and the sender of the order.

It is further contended that error was committed in refusing to direct an acquittal, when requested so to do, upon the ground that the letter containing the circular in question was incapable of delivery, being addressed to a fictitious name, and therefore was not within the scope of the statute creating the offence. But letters addressed to fictitious names are not incapable of delivery, as this case shows. Moreover, the statute says nothing about delivery. It deals with mailing and sending to be mailed. The words are: "No letter or circular concerning lotteries * * * shall be carried in the mail. Any person who shall knowingly deposit or send anything to be conveyed by mail in violation of this section shall be punished," etc. The case shows that a letter containing a circular concerning a lottery was deposited in the mail. The jury found that the defendant deposited the letter with intent to have it conveyed by mail. The finding was justified by the evidence, and it brought the defendant within the scope of the statute. The letter was none the less a letter deposited in the mail for the purpose of being conveyed by mail, because at the place to which it was conveyed it was delivered to a person who was corresponding under a fictitious name. Nor does it make any difference in the act done by the defendant that the person to whom the letter was delivered was an officer of the United States. The refusal to direct an acquittal was therefore correct.

The remainder of the questions presented arose in the course of empanelling the jury. Before the jury was sworn the defendant moved to quash the panel, and, in support of the motion, read an affidavit showing that Anthony L. Comstock, who was to be a witness against him, had conversed with some of the jurymen on the panel about lottery prosecutions, and the evidence gathered by him and in his possession, and what he expected to do in the future; and that three of the jurymen drawn heard the conversation, or portions thereof. The motion was denied. At the most, the motion was equivalent to a challenge to the array. Manifestly, the facts shown afford no support to a challenge to the array. The motion to quash the panel was therefore properly denied.

The defendant then challenged one of the jurors for favor, and propounded the following questions: *Question.* "If, on the trial of this case, it becomes a question as to who should be believed, Anthony Comstock or the defendant, the defendant being proved to be in the lottery business, would you give less credit to the defendant's testimony because he is proved to be in the lottery business?" *Question.* "Would you give less credit to the testimony of any one proved to be in the lottery business than you would give to persons not in that business?" Both questions were rejected.

These questions involved the same proposition, *i. e.,* that the fact that a person is engaged in an illegal calling must not be permitted to affect his credibility as a witness—a proposition clearly untenable. The occupation of a person may always be shown as bearing upon his credibility. A person is not shown to be incompetent to sit as a juror upon the trial of a thief by showing that he would give less credit to a thief than to one engaged in an honest calling.

It was next shown in support of the challenge that the juror had heard Comstock talking to a number of persons in the corridor before the trial about the wickedness of the men in the lottery business and the injury that business was doing, and that he had certain proofs against the lottery men; but nothing was said about the defendant's case. The talk was general about lottery men and the lottery business. The remarks here alluded to were not made in the presence of any person at the time sworn upon the jury in the defendant's case, and it cannot be held that the fact of having heard, before he was empanelled, general talk about the wickedness of those engaged in an illegal occupation disqualifies a person from sitting as juror upon the trial of one engaged in such occupation who is charged with crime.

The case, as presented in the record before us, shows a further ruling upon the challenge of the juror Perkins, to support which no effort is made, and which is so palpably erroneous as to give rise to the supposition that its presence in the record may be attributed to an error in making up the case. As the record stands, the ruling alluded to entitles

the defendant to a new trial, as a matter of course. Leave is, however, given to apply to the judge who presided at the trial for a correction of the record. If no correction of the record be made, an order will be entered directing a new trial. If the record be amended, the effect of the amendment will be the subject of further consideration.